UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SALLY A. THURSTON,

                          Plaintiff,          1:14-CV-1150
                                              (GTS/DEP)
v.

FRANCIS J. SISCA; ELVIRA H. SISCA;
FRANCIS J. SISCA, JR.; ELIZABETH
SISCA; and PETER F. SISCA, ESQ., as
escrow agent,

                          Defendants.
_____

APPEARANCES:                              OF COUNSEL:

BARCLAY DAMON LLP                         JON P. DEVENDORF, ESQ.
  Counsel for Plaintiff                   BRITTANY E. AUNGIER, ESQ.
One Park Place
300 South State Street
Syracuse, New York 13202-2078

IVEY, BARNUM & O'MARA, LLC                ANDREA C. SISCA, ESQ.
  Counsel for Defendants                  STEPHEN G. WALKO, ESQ.
170 Mason Street
Greenwich, Connecticut 06830

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach-of-contract action filed by Sally A. Thurston ("Plaintiff") against Francis J. Sisca, Elvira H. Sisca, Francis J. Sisca, Jr., and Elizabeth Sisca and Peter F. Sisca, Esq., as escrow agent ("Defendants"), are Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment.   For the reasons set forth below, Plaintiff's motion is granted, and Defendants' cross-motion is denied.

# I.     RELEVANT BACKGROUND

## A.     Plaintiff's Complaint

Because the parties have (in their memoranda of law) demonstrated an accurate understanding of the claims and supporting allegations asserted in Plaintiff's Complaint, the Court will not summarize those claims and allegations in this Decision and Order, which is intended primarily for the review of the parties.  Instead, the Court will merely note that, generally, the Complaint asserts two claims: (1) a claim that Plaintiff is entitled to a judicial declaration that she has, and has validly exercised, a right to terminate a 2014 contract to purchase a residential property in the Town of Bolton Landing in Warren County, New York, because of the condition of the property's septic system; and (2) a claim that Defendants have breached their contractual duty to return Plaintiff's ten-percent deposit of $199,500.  (Dkt. No. 1 [Plf.'s Compl.].)  Moreover, the Court will note that, in their Answer, Defendants assert three counterclaims: (1) a claim for breach of contract, (2) a claim for breach of the covenant of good faith a fair dealing, and (3) a claim for slander of title.  (Dkt. No. 5 [Defs.' Answer].)

## B.     Parties' Briefing on Current Motions

Generally, in her memorandum of law, Plaintiff argues that, as a matter of law based on the current record, Defendants are in breach of the parties' terminated Purchase Contract (by withholding her deposit) for three reasons: (1) Plaintiff's termination of the Purchase Contract was effective because the termination was timely, written, express and assented to by Defendants' counsel and, even if the termination could be deemed to have been conditional, the condition that would have prevented the termination (i.e., the reaching of a "new agreement" between the parties regarding the septic system) was never fulfilled; (2) even if Plaintiff's notice

of termination did not strictly comply with the notice-requirement provision of the Purchase Contract, the parties could, and did, under the law mutually agree to modify or eliminate the notice-requirement provision of the Purchase Contract; and (3) the parties' subsequent communications regarding the septic system are insufficient to revive or reinstate the terminated Purchase Contract. (Dkt. No. 54, Attach. 2 [Plf.'s Memo. of Law].)

Generally, in their opposition memorandum of law, Defendants assert two arguments: (1) genuine material issues of fact preclude entry of summary judgment in Plaintiff's favor because (a) the parties did not reach mutual assent (to terminate the Purchase Contact) through the emails exchanged between their attorneys, which were nothing more than settlement discussions (if not mere "posturing between attorneys"), and (b) the emails exchanged between the attorneys do not constitute "notices" under the notice-requirement provision of the Purchase Contract, because (i) the messages were neither sent by registered or certified mail nor delivered in person or by overnight courier, (ii) the parties had to, but did not, modify the notice-requirement provision in writing, and (iii) cases in which courts have excused strict compliance with such provisions are distinguishable from the current case in that the deviations from the provisions in those cases were minimal, which the deviation in the current case is not; and (2) Defendants are entitled to summary judgment on their breach-of-contract counterclaim, because, as a matter of law based on the current record, Plaintiff did not have the right to terminate the Purchase Contract for a failed septic inspection in that (a) for the Purchase Contract to require a satisfactory septic inspection, the form Warren County Contract must have been incorporated by reference in the Purchase Contract, and (b) the form Warren County Contract was not successfully incorporated by reference in the Purchase Contract (given the absence of language clearly communicating the

fact that the purpose of the reference was to incorporate the referenced material into the contract, rather than merely acknowledging that the referenced material was relevant to the contract). (Dkt. No. 57, Attach. 1 [Defs.' Opp'n Memo. of Law].)

Generally, her reply memorandum of law, Plaintiff asserts two arguments: (1) she is entitled to summary judgment because, contrary to Defendants' argument, the parties did reach mutual assent in that (a) Plaintiff's counsel gave notice of termination and the reason therefore in an email and requested that the email serve as formal notice, (b) Defendants' counsel implicitly accepted that request by stating in an email that Defendants have instructed him to return the deposit and cancel the Purchase Contract, (c) Defendants have shown no prejudice resulting from the parties' modifying the notice-requirement provision in the aforementioned manner, and (c) the subsequent attempts by Defendants' counsel to reach a new agreement regarding the septic system were unsuccessful and in no way constituted settlement negotiations under Fed. R. Evid. 408 (given that no case was yet pending or claim interposed); and (2) Defendants' cross-motion is without merit because (a) as a threshold matter, the validity of the termination in no way depends on the reason for the termination (and thus the Warren County Contract need not have been successfully incorporated by reference in the Purchase Contract), and (b) in any event, the form Warren County Contract was indeed successfully incorporated by reference in the Purchase Contract (given the limited and specific nature of the attempted incorporation), a fact admitted by Defendants' counsel in Paragraph 5 of his declaration. (Dkt. No. 58 [Plf.'s Reply Memo. of Law].)

### C. Statements of Undisputed Material Fact

#### 1. Statement on Plaintiff's Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported by Plaintiff in her statement of material facts and admitted by Defendants in their response thereto. (*Compare* Dkt. No. 54, Attach. 1 [Plf.'s Rule 7.1 Statement] *with* Dkt. No. 57, Attach. 2 [Defs.' Rule 7.1 Response].)

1. In or about May 2014, Sally A. Thurston ("Plaintiff") retained Michael Stafford, Esq., with the Stafford, Carr & McNally Law Firm, located in Lake George, New York, to represent her in a real estate transaction as the prospective purchaser of real property located at 39 Horicon Lane, Bolton Landing, New York (hereinafter referred to as the "Property").[1]

2. At the time, the Property was owned by Francis J. Sisca, Sr., Elvira H. Sisca, Francis J. Sisca, Jr., and Elizabeth J. Sisca (collectively, "Defendants"), who were represented by Peter F. Sisca, Esq.[2]

---

[1]    (*Compare* Dkt. No. 54, Attach. 1, at ¶ 1 [Plf.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 57, Attach. 2, at ¶ 1 [Defs.' Rule 7.1 Response, stating they are unable to admit or deny facts].) The Court notes that, on a motion for summary judgment, denials of knowledge are insufficient to create a genuine dispute of material fact. *See, e.g.,* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to . . . oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on matters stated.").

[2]    (*Compare* Dkt. No. 54, Attach. 1, at ¶ 2 [Plf.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 2 [Defs.' Rule 7.1 Response, denying fact but not citing portion of record that actually controverts fact].)

3.     At some point between May 30, 2014, and June 1, 2014, the parties executed a

Residential Contract of Sale, to which was attached a Rider to Contract of Sale (the "Rider").[3]

(Together, the Contract and Rider shall be referred to as the "Purchase Contract.")

4.     Paragraph 1 of the Rider provides that, "[i]n the event of a conflict of terms

between the body of the [Residential] Contract [of Sale] and the Seller's Rider attached thereto,

the terms of the Seller's Rider shall control."

5.     Paragraph 9 of the Rider provides as follows (with emphasis removed):

> This contract is subject to the right of purchaser, if she so desires,
> to conduct such property inspections as set forth in the Warren
> County Residential Real Estate Contract. Any inspection must be
> completed within twenty (20) days of receipt of a fully executed
> Contract.[4]

6.     Paragraph 10 of the Warren County Residential Real Estate Contract ("Warren

County Contract") provides as follows:

> **10. INSPECTIONS**
> This Agreement is contingent upon all of the following provisions unless
> crossed out and initialed by the Buyer. The Seller hereby acknowledges
> that the inspections may be intrusive and result in disturbances to the
> premises.
> . . .
> **SEPTIC SYSTEM INSPECTION:** A test of the septic system by a
> licensed professional engineer, licensed plumber, septic system contractor,
> County Health Department, or other qualified person indicating that the

---

[3]     (Dkt. No. 57, Attach. 3, at ¶ 4 [Sisca Decl., stating that he received a signed copy of the Residential Contract of Sale "[o]n May 30, 2014"]; Dkt. No. 54, Attach. 3, at ¶ 6 [Stafford Decl., stating that the Residential Contract of Sale was executed "[o]n or about June 1, 2014"]; *cf*. Dkt. No. 54, Attach. 4, at 2-5 [indicating that the date of the Residential Contract of Sale was "May __, 2014" but not indicating the specific date].)

[4]     (*Compar*e Dkt. No. 54, Attach. 1, at ¶ 5 [Plf.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 5 [Defs.' Rule 7.1 Response, denying fact but not citing portion of record that actually controverts fact].)

system is in working order. Upon conclusion of the inspection, the Buyer at their sole expense shall return the premises in the same condition as it was upon the commencement of the Inspection. Buyer at their sole expense shall be responsible for repairing any and all damage that has occurred on the premises as a result of the Inspection. If the Buyer fails to restore the property to its pre-inspection condition, as determined by the Seller, the Seller will cause the restoration to be performed and the Buyer will be responsible for any and all costs associated therewith if contract does not close.[5]

7.    Pursuant to the Purchase Contract, Plaintiff sent a deposit in the amount of one hundred ninety-nine thousand five hundred dollars ($199,500) to Peter F. Sisca, Esq., as escrow agent and counsel for Defendants.

8.    Paragraph 6(a) of the Residential Contract of Sale provided that the escrowee shall hold Plaintiff's deposit until closing or "sooner termination of [the] contract."

9.    Plaintiff retained Mr. Gerald DeVoe, a licensed New York State home inspector, who conducted an inspection of the Property on June 11, 2014.[6]

---

[5]    (*Compar*e Dkt. No. 54, Attach. 1, at ¶ 6 [Plf.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 6 [Defs.' Rule 7.1 Response, denying merely "implication" of fact].)  Denials challenging an implication of fact are insufficient to create a genuine dispute of material fact for trial, under both Fed. R. Civ. P. 56(e)(2) and Local Rule 7.1(a)(3) of the District's Local Rules of Practice.  *See Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of *asserted* facts, not the disputation of *implied* facts); *cf. Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts").

[6]    (*Compar*e Dkt. No. 54, Attach. 1, at ¶ 9 [Plf.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 9 [Defs.' Rule 7.1 Response, stating they are unable to admit or deny one of the facts].) Again, the Court notes that, on a motion for summary judgment, denials of knowledge are insufficient to create a genuine dispute of material fact.  *See, supra,* note 1 of this Decision and Order.

10. The Inspection Report contained checked boxes stating that the "[Septic] System['s] Design Flow [was] not capable of existing demand requirements," and that "[e]vidence of system/s failure [was] observed."[7]

11. On June 20, 2014, Plaintiff's counsel sent an e-mail to Defendants' counsel stating as follows, in pertinent part:

> After discussing the septic issues with my client, she has determined not to go forward with the contract unless a new system is installed . . . .
> Please allow this correspondence to serve as formal notice of my client's recession [sic] of the contract unless we can come to a new agreement for the septic system. . . .[8]

12. On June 21, 2014, Defendants' counsel sent a responsive email to Plaintiff's counsel stating, in pertinent part, that "my client has instructed me to return the deposit on Monday [June 23, 2014] and cancel the contract."[9]

---

[7]    (*Compare* Dkt. No. 54, Attach. 1, at ¶ 10 [Plf.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 10 [Defs.' Rule 7.1 Response, incorrectly denying materiality of fact asserted and failing to cite portion of record controverting it].) The Court notes that such denials of materiality by non-movants are ineffective to deny the facts asserted. *See, e.g., Wesley-Dickson v. Warwick Valley Cent. School Dist.*, 973 F. Supp.2d 386, 396, n.3 (S.D.N.Y. 2013); *U.S. v. City of New York*, 637 F.Supp.2d 77, 92 (S.D.N.Y. 2009); *Newmark v. Lawrence Hosp. Ctr.*, 07-CV-2861, 2008 WL 5054731, at *8, n.7 (S.D.N.Y. Oct. 20, 2008). The Court notes also that the asserted fact is material to whether or not there occurred a test of the septic system by a licensed professional engineer, licensed plumber, septic system contractor, County Health Department, or other qualified person indicating that the system is in working order.

[8]    (*Compare* Dkt. No. 54, Attach. 1, at ¶ 12 [Plf.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 12 [Defs.' Rule 7.1 Response, admitting quoted material in referenced email].)

[9]    (*Compare* Dkt. No. 54, Attach. 1, at ¶ 14 [Plf.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 14 [Defs.' Rule 7.1 Response, denying fact but failing to cite record evidence actually controverting fact].)

13.    On June 26, 2014, Plaintiff's counsel sent an email to Defendants' counsel

stating, in pertinent part, as follows:

> Receipt of your notification of cancellation of the contract is
> acknowledged. . . . Without requesting that the contract be reinstated at
> this time, I am requesting that Mr. [Tom] Hutchins be allowed to retest the
> [septic] system.[10]

14.    On July 1, 2014, Defendants' counsel sent an email to Plaintiff's counsel

attaching an email indicating that Defendants agreed to allow a re-test of the septic system

subject to an agreement on certain conditions as to the conducting of the test.[11]

15.    On July 3, 2014, Plaintiff's counsel sent an email to Defendants' counsel stating

as follows, in pertinent part: "I have had the opportunity to discuss your proposal with my client.

She is unwilling to agree to your client's proposal for reviving the contract."[12]

16.    On July 11, 2014, Plaintiff's counsel sent an email to Defendants counsel stating

as follows, in pertinent part: "Please allow this email to constitute written, formal demand for

return of my client's deposit."[13]

17.    On July 11, 2014, Defendants' counsel sent an email to Plaintiff's counsel stating

as follows, in pertinent part: "[M]y client has not yet determined how he wishes to proceed. He

---

[10]    (*Compare* Dkt. No. 54, Attach. 1, at ¶ 15 [Plf.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 15 [Defs.' Rule 7.1 Response, failing to deny fact and cite record evidence controverting it].)

[11]    (Dkt. No. 57, Attach. 2, at ¶ 16 [Defs.' Rule 7.1 Response, admitting fact and citing record evidence establishing fact].)

[12]    (*Compare* Dkt. No. 54, Attach. 1, at ¶ 17 [Plf.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 17 [Defs.' Rule 7.1 Response, denying fact but not citing portion of record that actually controverts fact].)

[13]    (*Compare* Dkt. No. 54, Attach. 1, at ¶ 18 [Plf.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 18 [Defs.' Rule 7.1 Response, failing to deny fact and cite record evidence controverting it].)

may decide to . . . hold your client to the contract or consent to cancel and return the deposit."[14]

18.     In or about July 2014, Defendants initially listed the Property with a real estate broker.

19.     On January 5, 2016, Defendants sold the Property for a price of $1,874,750, of which they paid a 5% commission.

## 2.     Statement on Defendants' Cross-Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported by Defendants in their statement of material facts and admitted by Plaintiff in her response thereto.  (*Compare* Dkt. No. 57, Attach. 2 [Defs.' Rule 7.1 Statement] with Dkt. No. 58, Attach. 2 [Plf.'s Rule 7.1 Response].)

1.     A disagreement arose between Plaintiff and Defendants regarding the results of the inspection performed by Mr. DeVoe on June 11, 2014.

2.     From June 16, 2014, through June 30, 2014, Plaintiff and/or her counsel engaged in email and telephonic discussions with Defendants and/or their counsel regarding, *inter alia*, the results of the septic inspection.

3.     By email dated June 20, 2014, Plaintiff, through her counsel, stated, *inter alia*, that she had "determined not to go forward with the contract unless a new system is installed to meet current standards for a five bedroom residence."

4.     During the time in question, the Property had four bedrooms.

---

[14]     (*Compare* Dkt. No. 54, Attach. 1, at ¶ 19 [Plf.'s Rule 7.1 Statement, asserting similar fact and supporting it with accurate record citation] *with* Dkt. No. 57, Attach. 2, at ¶ 18 [Defs.' Rule 7.1 Response, admitting fact and citing record evidence establishing fact].)

5. By email dated June 27, 2014, Plaintiff stated to Francis J. Sisca, Jr., *inter alia*, "[W]e're still trying to determine approximate costs of a new system, in the hopes of discussing changes and/or adjustment to the purchase price."

6. The purchase price to which Plaintiff was referring in her email of June 27, 2014, was the $1,995,000 agreed to in the Purchase Contract.

7. During a telephone conversation on June 27, 2014, Francis J. Sisca, Jr., told Plaintiff that he did not believe she was happy with the price at which she had agreed to purchase the Property; and Plaintiff responded that she was comfortable with the agreed price of $1,995,000, assuming (whether explicitly or implicitly) that a new septic system was installed as requested in her prior notice to terminate the Purchase Contract.[15]

8. During the telephone conversation on June 27, 2014, Plaintiff never expressly told Francis J. Sisca, Jr., that the Purchase Contract had been terminated or that she had terminated the Purchase Contract, assuming he knew it had been terminated based on their counsels' prior communications.[16]

---

[15] (*Compare* Dkt. No. 57, Attach. 2, at ¶ 29 [Defs' Rule 7.1 Statement, citing record evidence establishing all of asserted facts except fact expressed in last clause] *with* Dkt. No. 58, Attach. 2, at ¶ 29 [Plf.'s Rule 7.1 Response, citing record evidence establishing fact expressed in last clause].)

[16] (*Compare* Dkt. No. 57, Attach. 2, at ¶ 30 [Defs' Rule 7.1 Statement, citing record evidence establishing all of asserted facts except fact expressed in last clause] *with* Dkt. No. 58, Attach. 2, at ¶ 30 [Plf.'s Rule 7.1 Response, citing record evidence establishing fact expressed in last clause].)

9.      Paragraph 16(f) of the Purchase Contract provides as follows, in pertinent part:

>   This contract and [Plaintiff's] obligations to purchase the [Property] are also subject to and conditioned upon the fulfillment of the following conditions precedent: . . . [a]ll plumbing (including water supply and septic systems, if any) . . . being in working order as of the date of Closing.[17]

10.     Paragraph 25 of the Purchase Contract provides as follows, in pertinent part:

>   Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys . . . by registered or certified mail, postage prepaid, or (b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee . . . .[18]

11.     Paragraph 28(b) of the Purchase Contract provides as follows, in pertinent part:

"Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing."[19]

12.     On July 24, 2014, Plaintiff's counsel sent a letter to Defendants' counsel stating as follows, in pertinent part:

>   I am in receipt of your letter of July 14, and your email of July 11. As requested, pursuant to paragraph 25 of the . . . [Purchase Contract], I am communicating [Plaintiff's] demands via a formal letter.
>       As you were notified in writing by email correspondence of June 20, after a failed septic inspection of the premises my client exercised her

---

[17]     (*Compare* Dkt. No. 57, Attach. 2, at ¶ 31 [Defs' Rule 7.1 Statement, citing record evidence establishing asserted fact] *with* Dkt. No. 58, Attach. 2, at ¶ 31 [Plf.'s Rule 7.1 Response, citing record evidence establishing asserted fact].)

[18]     (*Compare* Dkt. No. 57, Attach. 2, at ¶ 32 [Defs' Rule 7.1 Statement, citing record evidence establishing asserted fact] *with* Dkt. No. 58, Attach. 2, at ¶ 32 [Plf.'s Rule 7.1 Response, citing record evidence establishing asserted fact].)

[19]     (*Compare* Dkt. No. 57, Attach. 2, at ¶ 33 [Defs' Rule 7.1 Statement, citing record evidence establishing asserted fact] *with* Dkt. No. 58, Attach. 2, at ¶ 33 [Plf.'s Rule 7.1 Response, citing record evidence establishing asserted fact].)

right to terminate the Purchase [Contract] pursuant to paragraph 6(f) of the form agreement and paragraph 9 of the rider. You responded also by email, on June 21, indicating that your client would return the escrowed Downpayment to my client on June 23, and list the property on that same date.

. . .

To date, the Downpayment has not been returned, yet the property has been listed for sale with a real estate agent. . . .

[Plaintiff] hereby demands return of the escrowed Downpayment funds within five (5) business days of this letter. In the absence of an acknowledgment and timely return of the escrowed Downpayment, we will be forced to consider what further legal actions to take . . . .[20]

13.     Paragraph 15 of the Purchase Contract scheduled the closing for September 5, 2014; however, Plaintiff did not appear for a closing on that date, because she believed the Purchase Contract had been terminated.[21]

14.     On September 9, 2014, Defendants' counsel sent a letter to Plaintiff's counsel stating, *inter alia*, that a new closing date will be scheduled for September 23, 2014, "time [is] of the essence," and if Plaintiff fails to appear at the rescheduled closing she will forfeit her contract deposit.[22]

15.     Plaintiff never closed on the purchase of the Property.

---

[20]     (*Compare* Dkt. No. 57, Attach. 2, at ¶ 34 [Defs' Rule 7.1 Statement, citing record evidence establishing asserted fact] *with* Dkt. No. 58, Attach. 2, at ¶ 34 [Plf.'s Rule 7.1 Response, citing record evidence establishing asserted fact].)

[21]     (*Compare* Dkt. No. 57, Attach. 2, at ¶ 35 [Defs' Rule 7.1 Statement, citing record evidence establishing asserted facts] *with* Dkt. No. 58, Attach. 2, at ¶ 35 [Plf.'s Rule 7.1 Response, citing record evidence establishing asserted facts].)

[22]     (*Compare* Dkt. No. 57, Attach. 2, at ¶ 36 [Defs' Rule 7.1 Statement, citing record evidence establishing asserted facts] *with* Dkt. No. 58, Attach. 2, at ¶ 36 [Plf.'s Rule 7.1 Response, citing record evidence establishing asserted facts].)

## II.     LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Because the parties have demonstrated (in their memoranda of law) an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.     Legal Standards Governing Plaintiff's Claims

Because the parties have demonstrated (in their memoranda of law) an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties. (*See generally* (Dkt. No. 54, Attach. 2 [Plf.'s Memo. of Law]; Dkt. No. 57, Attach. 1 [Defs.' Opp'n Memo. of Law]; Dkt. No. 58 [Plf.'s Reply Memo. of Law].)

## III.    ANALYSIS

After carefully considering the matter, the Court finds that Plaintiff's motion for summary judgment should be granted, and Defendants' cross-motion for summary judgment should be denied, for each of the reasons stated in Plaintiff's memoranda of law, the Court's prior summary of which is hereby incorporated by reference in this part of its decision. *See, supra,* Part I.B. of this Decision and Order. To those reasons, the Court adds the following ten points, which are intended to supplement and not supplant Plaintiff's reasons.

First, the precise reason that Plaintiff's counsel's notice of June 20, 2014, did not arguably comply with Paragraph 25 of the Purchase Contract is that it was sent electronically rather than (1) by registered or certified mail, postage prepaid, or (b) by person or by overnight courier, with receipt acknowledged, to the respective addresses given in the Purchase Contract for the party and the Escrowee. Here, the email does not appear to have undermined any of the objectives of the notice-requirement provision contained in Paragraph 25 of the Purchase Contract: Defendant's counsel successfully and promptly received the email (given that he responded to it one day after it was sent); he did not overlook the relevant portion of the email (given that he responded to its attempt to terminate the Purchase Contract); he did not resist the ultimate relief requested in the email (i.e., the termination of the Purchase Contract); and documentation of receipt of the email was generated (given the attachment of the email to a subsequent email from Defendants' counsel). (*See, e.g.,* Dkt. No. 57, Attach. 6, at 3.) Furthermore, Defendants' counsel himself appeared to use email as a means of communicating notice of termination of the Purchase Contract. *See, supra,* Fact No. 12 of Part I.C.2. of this Decision and Order. Under the circumstances, email appears to have been an efficient (and accepted) alternative to the other methods of notice. *See Bd. of Mgrs. of Academy Twins Condo. v. Hernandez*, No. 112410/10, 2010 N.Y. Misc. LEXIS 6238, at *14 (Sup. Ct. N.Y. Cnty. Dec. 16, 2010) (holding that, despite a requirement for notice by certified mail, email was sufficient where such notice "undermine[d] neither the objectives of the by-laws nor the [Condominium] Act" but rather constitutefd] an efficient alternative to the other methods of notice").

Second, even if the notice did not sufficiently comply with Paragraph 25 of the Purchase Contract, that paragraph could be modified by email pursuant to Paragraph 28(a) of the Purchase

Contract, which permitted the provisions of the Purchase Contract to be modified in writing. *See, supra,* Fact No. 11 of Part I.C.2. of this Decision and Order. Here, Plaintiff's counsel requested in writing that Defendants' counsel "allow [his email of June 20, 2014] to serve as formal notice of [termination] . . . unless [the parties] can come to a new agreement for the septic system." *See, supra,* Fact No. 11 of Part I.C.1. of this Decision and Order. Defendants appear to argue that their counsel never expressly consented to this request. However, one day after Plaintiff's counsel made his request, Defendants' counsel sent an email to Plaintiff's counsel stating that Defendants have instructed him to cancel the Purchase Contract and return Plaintiff's deposit. *See, supra,* Fact No. 12 of Part I.C.1. of this Decision and Order. Defendants' appear to argue that such a response was not intended to express the consent requested by Plaintiff's counsel, but to serve as mere "posturing" on the issue of a new septic system. The problem is the response unambiguously consented to the very subject of the notice: termination of the Purchase Contract. Moreover, the consent was communicated through the very method used to communicate the notice (and request): email. Finally, the response also *sua sponte* promised the return of Plaintiff's deposit, which would have been the result of a *valid* termination. Under the circumstances, the Court finds that no reasonable factfinder could conclude that, on June 21, 2014, Defendants' counsel did not consent (whether explicitly or implicitly) to Plaintiff's counsel's request to allow his email to serve as formal notice of termination.

Third, even if Defendants did not express such consent to electronic transmission on June 21, 2014, they subsequently did so *twice*. More specifically, on July 14, 2014, Defendants' counsel sent Plaintiff's counsel a letter stating, in pertinent part, that, "[n]otwithstanding paragraph 25, I will accept your July 11, 2014 e-mail, without prejudice, as your formal demand

for the return of your client's deposit." (Dkt. No. 57, Attach. 9, at 2.) Moreover, on July 24, 2014, Defendants' counsel sent Plaintiff's counsel a letter stating, in pertinent part, that "[m]y clients and I acknowledge your demand for the return of the Contract deposit on July 14, 2014." (Dkt. No. 54, Attach. 14, at 78.) It is difficult to imagine how Defendants could recognize a demand for a post-termination deposit without recognizing the notice of termination itself.

Fourth, Defendants' correspondence reveals that, by mid-July, the real reason they opposed Plaintiff's notice of termination was the ground on which it was based: Mr. DeVoe's septic system inspection. More specifically, Defendants objected to the sufficiency of Mr. DeVoe's qualifications and the methods of his inspection.[23] The problem is that Paragraph 10 of the Warren County Contract merely requires Mr. DeVoe to be "another qualified person" (as compared to "a licensed professional engineer, licensed plumber, septic system contractor, [or] County Health Department"); it is undisputed that he was a licensed New York State home inspector; and Plaintiff has adduced no admissible evidence that he was not qualified. *See, supra,* Fact Nos. 6, 9 of Part I.C.1. of this Decision and Order.[24] Moreover, Paragraph 10 of the Warren County Contract does not expressly require the methods that Defendants were demanding (i.e., compliance with "basic [American Society of Home Inspectors] standards and

---

[23]    (*See, e.g.,* Dkt. No. 57, Attach. 8 [Defs.' Email of July 11, 2014, stating, in pertinent part, "[W]e do not recognize your inspector as a qualified person under the provision of the Warren County Contract . . . . In addition, . . . . he failed to follow or even attempt to follow the basic ASHI standards and requirements of septic testing. . . .  Accordingly, his test . . . is not the basis for cancelling a contract."]; Dkt. No. 57, Attach. 9, at 2 [Defs.' Ltr. of July 24, 2014, stating, in pertinent part, "As I have advised you, we do not recognize the *basis* of your client's right to terminate the Contract."] [emphasis added].)

[24]    Indeed, while the Court need not rely on the following fact as undisputed, it notes that Mr. DeVoe's inspection report indicates that he was a past member of the National Association of Certified Building Inspectors. (Dkt. No. 54, Attach. 6.)

requirements of septic testing").  *See, supra,* Fact No. 6 of Part I.C.1. of this Decision and Order.

Nonetheless, the inspection report (which is 21 pages in length) contains two pages of findings

regarding the septic system, summarizes the testing methods used (e.g., the performance of a "2

hour well flow test . . . with 5 gallons per minute," the taking of a "bacteriological water

sample," etc.), and states that "a standard inspection was conducted . . . in a manner consistent

with industry standards."  (Dkt. No. 54, Attach. 6, at 2, 13-14.)  While Defendants obviously

disagree with the results of Mr. DeVoe's test of their septic system, that disagreement (which is

often the case in such circumstances) does not deprive his test results of legal effect under the

parties' contract.

Fifth, the language in the Purchase Contract that attempted to incorporate by reference

the form Warren County Contract sufficiently communicated both the fact of incorporation and

purpose for the incorporation: to "subject" the Purchase Contract to the "right of [the] purchaser,

if she so desires, to conduct [the delineated] property inspections" (assuming they are completed

within twenty days of the receipt of a fully executed Contract).  *See, supra,* Fact No. 5 of Part

I.C.1. of this Decision and Order.  Defendants appear to require that the Purchase Contract

explicitly state the exact paragraph(s) of the incorporated document (i.e., Paragraph 10 of the

form Warren County Contract) and/or perhaps even the reason for the incorporation (i.e., to

relieve a buyer of her promise to purchase a property costing two million dollars when that

property has failed an inspection).  The Court does not interpret the incorporation-by-reference

cases cited by Defendants as requiring such communication(s); rather, those cases reject

inarticulate attempts at incorporation, the scopes of which and/or reasons therefore were not

obvious.  Here, both the scope of the incorporation and reason therefore were obvious.

18

Sixth, contrary to Defendants' argument, the parties' emails between June 20, 2014, and July 3, 2014, cannot be deemed to constitute settlement negotiations under Fed. R. Evid. 408 because no case was pending or threatened at the time. Indeed, the Court notes that, in his email of June 21, 2014, Defendants' counsel communicated to Plaintiff's counsel an intent to return Plaintiff's deposit. *See, supra,* Fact No. 12 of Part I.C.1. of this Decision and Order. As a result, even if it were reasonable to discern a dispute regarding the findings of Plaintiff's home inspector from other parts of Defendants' counsel's email of June 21, 2014, it would not be reasonable to discern the threat of litigation from that email. Rather, such a threat does not appear to have materialized until later in July, when it became clear that Defendants would refuse to return Plaintiff's deposit. *See, supra,* Fact No. 12 of Part I.C.2. of this Decision and Order.

Seventh, the fact that the house had, during the time in question, four bedrooms (instead of five) is irrelevant to whether Plaintiff had the right to terminate the Purchase Contract based on the results of Mr. DeVoe's inspection of the septic system. As indicated above, Paragraph 9 of the Rider and Paragraph 10 of the Warren County Contract gave her that right. *See, supra,* Fact Nos. 4, 5 of Part I.C.1. of this Decision and Order. The Court notes that the inspection report did *not* state that the septic system was not capable of *future* demand requirements (i.e., after the house was converted to five bedrooms), but that the septic system was not capable of *existing* demand requirements. *See, supra,* Fact No. 10 of Part I.C.1. of this Decision and Order. In any event, the inspection report also expressly stated that "[e]vidence of system/s failure [was] observed." *Id.* Simply stated, the inspection report did not indicate that the septic system was in "working order."

Eighth, the fact that Plaintiff never expressly told Francis J. Sisca, Jr., on June 27, 2014, that the Purchase Contract had been terminated is irrelevant to whether the Purchase Contract had in fact been terminated, under the circumstances. Both sides were represented by counsel at the time. *See, supra,* Fact Nos. 1, 2 of Part I.C.1. of this Decision and Order. Counsel for Francis J. Sisca, Jr., had been informed of–and indeed had communicated his clients' *demand* of–such termination approximately a week before June 27, 2014. *See, supra,* Fact Nos. 11, 12 of Part I.C.1. of this Decision and Order. The condition that would have prevented the termination (i.e., the reaching of a "new agreement" between the parties on the septic system) had not been fulfilled by June 27, 2014 (and indeed never was fulfilled). *See, supra,* Fact Nos. 11, 15 of Part I.C.1. of this Decision and Order. Finally, Defendants have not adduced evidence, or even an argument, that their counsel Francis J. Sisca, Jr., either failed to communicate with them, or did not possess the authority to act on their behalf, and bind them, in the transaction, before June 27, 2014 (or at any time).

Ninth, Defendants' reliance on Paragraph 16(f) of the Purchase Contract is misplaced. At most, that paragraph provides *another reason* for Plaintiff to be relieved of her duty to purchase the Property under of the Purchase Contract (e.g., conditioning that duty on the septic system being in working order as of the date of closing, *regardless* of whether the septic system failed a prior inspection). That paragraph does not require Plaintiff to comply with the Purchase Contract on the (originally scheduled) date of closing if she has given notice of termination of that contract due to a failed septic-system inspection that was completed months before (i.e., within 20 days of receipt of the fully executed Purchase Contract). *See, supra,* Fact No. 9 of Part I.C.2. of this Decision and Order; Fact Nos. 5, 6 of Part I.C.1. of this Decision and Order.

Setting aside the absurdity of having to perform on a terminated contract, the fact remains that to construe Paragraph 16(f) as somehow reviving a terminated contract would conflict with the meaning of Paragraph 9 of the Rider, which is expressly prohibited by Paragraph 1 of the Rider. *See, supra,* Fact No. 4 of Part I.C.1. of this Decision and Order.

Tenth, Defendants' implication that the closing date on September 5, 2014, remained in effect on September 5, 2014, and/or that they sincerely believed that fact at the time, is undermined by the following facts: (1) they learned on June 20, 2014, that (at the very least) Plaintiff had attempted to terminate the contract; (2) they themselves had instructed their counsel to terminate the contract on June 21, 2014; (3) they did not subsequently learn that the termination (which had indeed been confirmed by Plaintiff's counsel) had somehow been prevented or revived; and (4) they listed the house with a broker in July of 2014, despite having entered into the Purchase Contract with Plaintiff in May of 2014. *See, supra,* Fact Nos. 11, 18 of Part I.C.1. of this Decision and Order. In any event, any such subjective belief would be contrary to the unambiguous written communications by counsel between June 20, 2014, and July 3, 2014. Plaintiff successfully terminated the Purchase Contract; it is time to return her deposit.

For all of these alternative reasons, the Court grants Plaintiff's motion and denies Defendants' cross-motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for summary judgment (Dkt. No. 54) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendants' cross-motion for summary judgment (Dkt. No. 57) is **<u>DENIED</u>**; and it is further

**ORDERED** that the Clerk of the Court shall **<u>DISMISS</u>** Defendants' counterclaims, issue

a Judgment for Plaintiff and against Defendants in the amount of **ONE HUNDRED NINETY-**

**NINE THOUSAND FIVE HUNDRED DOLLARS ($199,500.00)**, together with the costs and

disbursements of this action, and close this action.

Dated: August 22, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge